1

2

3

4

5            UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   MANUEL SANCHEZ,

8                                      NO:  2:14-CV-236-RMP
                        Plaintiff,
9                                      ORDER GRANTING DEFENDANTS'
        v.                             MOTION FOR SUMMARY
10                                     JUDGMENT
    WAYNE ASHTON, and DEA
11  AGENT,

12                      Defendants.

13

14      BEFORE THE COURT is Defendant DEA Special Agent Wayne Ashton's

15  Motion for Summary Judgment, **ECF No. 24**.  The Court has reviewed the motion,

16  all relevant filings, and is fully informed.

17                      **BACKGROUND**

18      Drug Enforcement Administration ("DEA") agents organized a controlled

19  buy between Plaintiff Manuel Sanchez and a confidential informant to occur on

20  July 26, 2012, at approximately 1:00 p.m., in the Home Depot parking lot located

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 1

in Union Gap, Washington.  ECF No. 1, Compl.; ECF No. 26, Ashton Decl., ¶ 2.

The confidential informant for the Yakima Police Department had made two

previous controlled buys from Mr. Sanchez.  ECF No. 26, Ashton Decl., ¶ 2.  DEA

agents and local law enforcement were on the scene in the parking lot prior to Mr.

Sanchez's arrival.  ECF No. 26, Ashton Decl., ¶ 2; ECF No. 27, Lopez Decl., ¶ 2.

After Mr. Sanchez completed the drug transaction with the confidential

informant, two cars containing Task Force officers drove toward Mr. Sanchez's

vehicle to arrest him.  ECF No. 26, Ashton Decl.; ECF No. 27, Lopez Decl., ¶ 4.

Defendant DEA Special Agent Wayne Ashton, DEA Special Agent Jared Gustin,

and DEA Resident Agent in Charge Reinaldo Lopez approached Mr. Sanchez's

vehicle from behind.  They turned on the warning lights and siren of their car as

they approached.  ECF No. 26, Ashton Decl., ¶ 5.f; ECF No. 27, Lopez Decl., ¶ 4.

However, Mr. Sanchez contends that he was unaware that the officers were law

enforcement, believing instead that they were criminals attempting to rob him.

ECF No. 1, Compl. at 8.

After Mr. Sanchez saw the officers drive toward him, Mr. Sanchez drove

forward quickly enough that Agent Ashton heard the tires on Mr. Sanchez's car

squeal.  ECF No. 26, Ashton Decl., ¶ 5.g; ECF No. 27, Lopez Decl., ¶ 4.  Mr.

Sanchez drove his vehicle into both the confidential informant's car as well as a

car containing two Task Force officers.  ECF No. 26, Ashton Decl., ¶ 5.g; ECF No.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 2

26, Lopez Decl., ¶ 4.  Mr. Sanchez then proceeded to drive away.  ECF No. 1, Compl. at 2; ECF No. 26, Ashton Decl., ¶ 5.g; ECF No. 27, Lopez Decl., ¶ 4.

As Mr. Sanchez fled from the collision, Agent Ashton exited his vehicle wearing a protective vest with his badge and the word "POLICE" written on the front and the letters "DEA" on the back.  ECF No. 26, Ashton Decl., ¶¶ 5g, 7 Agent Ashton states that he was concerned for the safety of his fellow officers and that of the public because Mr. Sanchez was driving erratically in the middle of the day in a commercial parking lot.  ECF No. 26, Ashton Decl., ¶ 5.g.  Agent Ashton stood in the parking lot in an attempt to block one possible exit route.  ECF No. 26, Ashton Decl., ¶ 5.h.  However, there were additional exit routes available to Mr. Sanchez.  ECF No. 26, Ashton Decl., ¶ 5.i.

After making two left hand turns through the parking lot, Mr. Sanchez made a third left hand turn, driving back toward Agent Ashton, the other task force officers, and the confidential informant.  ECF No. 26, Ashton Decl., ¶ 5.g, Ex. 4; ECF No. 27, Lopez Decl., ¶ 5.  Agent Ashton states that Mr. Sanchez made eye contact with him.  ECF No. 26, Ashton Decl., ¶ 5.h.  Mr. Sanchez then looked to his right toward a possible exit route, and then to his left toward Agent Ashton, before driving directly toward Agent Ashton.  ECF No. 26, Ashton Decl., ¶ 5.h; ECF No. 27, Lopez Decl. ¶ 6.  Agent Ashton and Agent Lopez feared that Mr.

Sanchez would run over Agent Ashton and kill him.  ECF No. 26, Ashton Decl., ¶ 5.i; ECF No. 27, Lopez Decl., ¶ 6.

When Mr. Sanchez's car was approximately fifteen yards from Agent Ashton and heading directly toward him, Agent Ashton fired at Mr. Sanchez through the windshield and struck him.  ECF No. 1, Compl. at 3; ECF No. 26, Ashton Decl., ¶ 5.h; ECF No. 27, Lopez Decl., ¶ 6.  Eventually, Mr. Sanchez's vehicle stopped approximately fifteen feet from Agent Ashton.  ECF No. 26, Ashton Decl., ¶ 5.h.  Mr. Sanchez sustained injuries from a gunshot to the head.  ECF No. 1, Compl. at 3.

Mr. Sanchez entered a guilty plea on December 18, 2012, to one count of Distribution of a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1).  ECF No. 10-3.  The plea agreement stated on page 5:

> Defendant drove toward DEA Agent Wayne Ashton, who was on foot, positioned in between the Defendant's car and an exit.  The agent exercised deadly force by shooting the Defendant.  Defendant admits that his conduct recklessly created a substantial risk of death or serious bodily harm to DEA Agent Ashton, the other agents and officers present, the CS, as well as the public.

ECF No. 10-2.  At the change of plea hearing, the Honorable Judge Edward F. Shea accepted Mr. Sanchez's plea as "knowing, intelligent and voluntary."  ECF No. 10-3 at 22.

Mr. Sanchez filed this complaint[1] on July 18, 2014, naming the DEA and Agent Ashton as Defendants.  ECF No. 1.  On Defendants' Motion to Dismiss, the Court dismissed the DEA and Mr. Sanchez's second cause of action for violation of due process.  ECF No. 23.  Regarding Mr. Sanchez's first cause of action against Agent Ashton for the use of excessive force, the Court held that Mr. Sanchez was judicially estopped from denying that he posed a serious risk of death or bodily injury to Agent Ashton.  ECF No. 23 at 12.

Agent Ashton now moves for summary judgment on the basis of qualified immunity and because there is no genuine issue of material fact regarding whether Agent Ashton's use of force was reasonable under the Fourth Amendment.  ECF No. 24.

---

[1] Mr. Sanchez filed the complaint pursuant to 42 U.S.C. § 1983.  ECF No. 1. Section 1983 generally does not apply to suits against the United States federal government or its agents.  *See United States v. Price*, 383 U.S. 787, 794 n.7 (1966). *But see Tongol v. Usery*, 601 F.2d 1091, 1097 (9th Cir. 1979).  However, because a court construes *pro se* complaints "liberally," *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011), the Court construes Mr. Sanchez's complaint as an action brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

1    **DISCUSSION**

2        Summary judgment is appropriate when the moving party establishes that

3    there are no genuine issues of material fact and that the movant is entitled to

4    judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the moving party

5    demonstrates the absence of a genuine issue of material fact, the burden then shifts

6    to the non-moving party to set out specific facts showing a genuine issue for trial.

7    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  A genuine issue of material

8    fact exists if sufficient evidence supports the claimed factual dispute, requiring "a

9    jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W.*

10   *Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

11       The evidence presented by both the moving and non-moving parties must be

12   admissible.  Fed. R. Civ. P. 56(e).  Evidence that may be relied upon at the

13   summary judgment stage includes "depositions, documents, electronically stored

14   information, affidavits or declarations, stipulations . . . admissions, [and]

15   interrogatory answers . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  The court will not

16   presume missing facts, and non-specific facts in affidavits are not sufficient to

17   support or undermine a claim.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89

18   (1990).

19       In evaluating a motion for summary judgment, the Court must draw all

20   reasonable inferences in favor of the nonmoving party.  *Dzung Chu v. Oracle*

*Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  However, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of that facts . . . ."  *Scott v. Harris*, 550 U.S. 372, 380 (207).

## A.    Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012).  The question of qualified immunity should be resolved in the defendant's favor if the plaintiff fails to allege the violation of a clearly established constitutional right.  *Siegert v. Gilley*, 500 U.S. 226, 232–33 (1991).

For a constitutional right to be clearly established so that qualified immunity does not apply, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "In other words, existing precedent must have placed the statutory or constitutional question beyond debate."  *Reichle*, 132 S.Ct. at 2093 (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011)) (internal quotation marks omitted).  A court may grant qualified

immunity on the basis that a purported right was not "clearly established," without determining "whether the purported right exists at all." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The Fourth Amendment protects a defendant's right against the use of excessive or unreasonable force to effect his arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is more properly characterized as one invoking the protections of the Fourth Amendment . . . .). Thus, we begin with the basic presumption that Mr. Sanchez had a clearly established constitutional right to be free from the use of unreasonable or excessive force when he was apprehended.

Determining whether the particular force used was unreasonable and thus violated the Fourth Amendment requires a balancing of several factors:  "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.  If a court or jury must engage in a balancing test to determine whether an officer's use of force was justified by the suspect's conduct, the contours of the suspect's constitutional right likely were not "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

1    In this case, Mr. Sanchez's actions of driving his car directly toward Agent

2    Ashton, endangering both Agent Ashton as well as others, even though there were

3    other exits available, undermines his argument that he had a clearly established

4    constitutional right to be free from the use of deadly force to stop him.  Although

5    there may be instances when there is no question that an officer's use of force is

6    unreasonable, the evidence in this case is that Mr. Sanchez directed the weight and

7    force of his car at Agent Ashton in a manner that both Agent Ashton and Agent

8    Lopez deemed threatening and likely to cause significant bodily harm or death to

9    Agent Ashton or others.  From the evidence presented, the Court concludes that

10   Agent Ashton's decision to fire at Mr. Sanchez did not violate a clearly established

11   constitutional right, because Mr. Sanchez's own conduct presented a risk of death

12   or serious bodily injury to Agent Ashton or others which arguably justified Agent

13   Ashton's use of force in response.

14       Therefore, Agent Ashton's conduct is shielded by qualified immunity.  The

15   Court grants Agent Ashton's motion for summary judgment as a matter of law.

16   **B.    Reasonableness**

17       Alternatively, Agent Ashton argues that the Court should grant summary

18   judgment in his favor because his conduct was objectively reasonable.  ECF No.

19   24.  In other words, Agent Ashton argues that there is no genuine issue of material

20   fact as to whether he was justified in shooting Mr. Sanchez under the

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 9

1  circumstances.  Thus, the Court considers the three factors delineated in *Graham*:

2  "the severity of the crime at issue, whether the suspect poses an immediate threat

3  to the safety of the officers or others, and whether he is actively resisting arrest or

4  attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

5        "The reasonableness of a particular use of force must be judged from the

6  perspective of a reasonable officer on the scene, rather than with the 20/20 vision

7  of hindsight."  *Id.*  Additionally, "[t]he calculus of reasonableness must embody

8  allowance for the fact that police officers are often forced to make split-second

9  judgments – in circumstances that are tense, uncertain, and rapidly evolving –

10  about the amount of force that is necessary in a particular situation."  *Id.* at 396-97.

11        Agent Ashton maintains that the sale of methamphetamine is an inherently

12  dangerous crime because the effects of methamphetamine and its distribution have

13  the ability to affect negatively a large group of people.  ECF No. 24 at 11.  The

14  Court agrees that distribution of methamphetamine is a dangerous crime, because

15  of the extensive damage to people and families that result from its distribution.

16  Therefore, the first factor weighs in favor of a finding that Agent Ashton's use of

17  force was reasonable.

18

19

20

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 10

In analyzing the remaining factors as to whether Agent Ashton's conduct was reasonable, the Court finds that there are no genuine issues of material fact[2] that Mr. Sanchez's driving his car directly at Agent Ashton, who was identified as a law enforcement officer, was engaging in conduct that "recklessly created a substantial risk of death or serious bodily harm to DEA Agent Ashton, the other agents and officers present, the confidential informant, as well as the public," ECF No. 10-2.

Mr. Sanchez admits in his Complaint that he was attempting to flee the scene. ECF No. 1. Although Mr. Sanchez argues that he did not know that the officers were law enforcement, this contention is contradicted by the record. The record shows that Agent Ashton's car employed its flashing lights and siren, and Mr. Sanchez made eye contact with Agent Ashton while the agent was wearing his badge and a protective vest with the word "POLICE" written on the front and "DEA" on the back. ECF No. 26, Ashton Decl., ¶¶ 5.f, 7; ECF No. 27, Lopez Decl., ¶ 4. It is implausible, given these facts, that Mr. Sanchez was unaware that the officers were law enforcement. *See Scott*, 550 U.S. at 380 (holding that "when opposing parties tell two different stories, one of which is blatantly contradicted by

_____

[2] The Court previously held that Mr. Sanchez is judicially estopped from denying that he created this risk. ECF No. 23 at 12.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 11

1  the record, so that no reasonable jury could believe it, a court should not adopt that

2  version of that facts . . . .”).

3      Given the threat that Mr. Sanchez posed to the agent and others by driving

4  directly toward identifiable law enforcement officers after having been involved in

5  a sale of methamphetamine, the Court finds that Agent Ashton's conduct was

6  objectively reasonable under the circumstances.  Therefore, there is no genuine

7  issue of material fact that Agent Ashton's conduct did not violate the Fourth

8  Amendment.  Agent Ashton's motion for summary judgment is granted.

9      Accordingly, **IT IS HEREBY ORDERED**:

10  1.  Defendant DEA Special Agent Wayne Ashton's Motion for Summary

11      Judgment, **ECF No. 24**, is **GRANTED.**  Plaintiff's Complaint is

12      **DISMISSED with prejudice**.

13  2.  **Judgment** is **ENTERED** in favor of Defendants.

14  3.  All pending motions, if any, are **DENIED AS MOOT**.

15  4.  All scheduled court hearings, if any, are **STRICKEN**.

16      The District Court Clerk is hereby directed to enter this Order, to provide

17  copies to pro se plaintiff and to defense counsel, and to **close this case**.

18      **DATED** this 24th day of September 2015.

19

20
            *s/ Rosanna Malouf Peterson*
            ROSANNA MALOUF PETERSON
            Chief United States District Court Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT~ 12